IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DANIEL VALLEJO RECIO, | § | |
| Institutional ID No. 00598857, | § | |
| SID No. 4470928, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 5:18-CV-264-BQ |
| v. | § | |
| | § | |
| NFN VASQUES, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Pro se Plaintiff Daniel Vallejo Recio filed this 42 U.S.C. § 1983 action on November 1, 2018, complaining of events alleged to have occurred during his incarceration at the John Montford Unit (Montford Unit) within the Texas Department of Criminal Justice (TDCJ). ECF No. 1. On February 22, 2019, the United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. ECF No. 19. The undersigned thereafter reviewed Recio's Complaint and authenticated records from TDCJ, and held an evidentiary hearing on June 20, 2019, in accordance with *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). ECF No. 22.

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following Report and Recommendation to the United States District Judge.[1]

---

[1] Recio is not proceeding *in forma pauperis* in this action. Because he is currently incarcerated, however, the Court has screened Recio's Complaint pursuant to 28 U.S.C. § 1915A.

# I.     Standard of Review

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical or other prison records if they are adequately identified and authenticated").

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such

plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A.    Recio's Claims

In his Complaint, Recio names the following individuals as Defendants:  (1) Correctional Officer (CO) Rudy Vasquez; (2) CO Erik Cerbantez; (3) CO Nathan Martinez; (4) an unnamed white male CO (John Doe) who worked day shifts; (5) Nurse Sauceda; and (6) Sergeant Camrroon.[2]  Compl. 1, 4, 6, 8, 10, ECF No. 1.[3]  Recio also identifies several other Defendants simply by surname throughout the body of his Complaint, including Garcia,[4] Joseph, Gills, and Woreningo (*id.* at 28), as well as property officer Arismendes and a female property officer named Martinez. *Id.* at 30.  At the *Spears* hearing, Recio further named Lieutenant White and three Montford medical providers—"Betty," "Benichoo," and a female, first shift nurse (Jane Doe)—as Defendants.

Recio alleges that on May 31, 2018, he threw water on CO Vasquez after Vasquez told Recio he would not provide him food.[5] Tr. 3:07:55–:08:15.  According to Recio, COs Cerbantez and Vasquez then opened his cell door and that of an inmate across the hall[6] and directed the other inmate to fight Recio. Compl. 7; Tr. 3:08:42–:16:08.  Recio stated in his *Spears* hearing testimony

---

[2] Recio spells Defendants' surnames as "Vasques" and "Servantes." Compl. 1. TDCJ's authenticated records show, however, that Vasques's name is "Rudy Vasquez," Servantes's name is "Erik Cerbantez," and CO Martinez's first name is "Nathan."  The Court therefore refers to Defendants by these names.

[3] Page citations to Recio's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

[4] Although Recio alleges that Garcia works at the Bill Clements Unit in Amarillo, Texas, the Court nevertheless screens his claim against Garcia in this action.

[5] The authenticated records reflect that the incident described by Recio occurred on June 1, 2018.  In his Complaint and at the *Spears* hearing, however, Recio asserts that the incident occurred on May 31, 2018. Compl. 7; Tr. 3:04:54.

[6] The authenticated records show the inmate's name is Richard Adams.

that he and Adams fought for approximately fifteen minutes while the officers watched and did nothing to stop the fight.  Tr. 3:08:42–:16.08.  After fifteen minutes, Recio asserts that COs Vasquez and Cerbantez joined in the fight, with one officer holding Recio down while the other punched him in the ribs and back.  *Id.*  Recio avers that his ribs and back were bruised and painful as a result, although he did not communicate this information to Defendants.  Tr. 3:20:47–:21:12. Recio claims that, a few hours after the incident, he requested medical treatment from Lieutenant White, Sergeant Camrroon, and Nurse Sauceda, but they denied his request.  Tr. 3:16:20–:57, 3:22:11–:43, 3:23:18–:25.  He further alleges that the next day, June 1, he "spoke to" Jane Doe but "she also denied the attention of the . . . infirmary."  Tr. 3:26:02–:18.

In addition, Recio alleges that COs Martinez, Cerbantez, Vasquez, and John Doe deprived him of food and water from May 31 to June 2, 2018.  Compl. 7–8; Tr. 3:07:26–:35.  Recio stated at the *Spears* hearing that he did not receive dinner or water on May 31 and that Defendants failed to provide him with any meals or water on June 1 and 2.  Tr. 3:31:17–:34:56.  He asserts that the lack of food and water caused blisters in his mouth, stomach pains and cramps, retching, dizziness, and sleeplessness.  Tr. 3:35:11–:36:49.

Recio also contends that property officers Martinez and Arismendes "would not give him personal property" between July 23 and November 8, 2018.  Compl. 30.  Finally, he claims that several medical professionals, including Doctors Joseph, Garcia, Gills, and Woreningo, as well as Nurse Sauceda and persons named "Betty" and "Benichoo" (collectively, the Medical Professionals), retaliated against him by forcing him to stay at Montford because of his "spirituality" and "so the officers would have a job."  Compl. 10, 28; Tr. 3:36:55–:42:05.

**B.    The AG's Office has Identified the Doe Defendants**

The Court ordered the Office of the Attorney General for the State of Texas (AG) to identify the Doe Defendants, concluding the AG would most likely represent such defendants if and when they are served. *See* ECF Nos. 23, 27. Specifically, the Court directed the AG "to identify any white male officer who worked day shifts on Recio's wing at the Montford Unit on May 31, June 1, and June 2, 2018, who had the responsibility to provide meals and/or water to Recio, and any first shift female nurse at the Montford Unit from whom Recio could have requested medical treatment on June 1, 2018." ECF No. 23. In response, the AG filed notices informing the Court that: (1) the John Doe officer is likely CO IV Michael Thomason (ECF No. 26); and (2) the Jane Doe nurse is likely Amanda Hernandez.[7] ECF No. 28. For the purpose of its analysis herein, the Court refers to the Doe Defendants by the names provided by the AG.

**C.    Recio's Factual Allegations Regarding the Medical Professionals' Purported Retaliation Describe Fantastic and Delusional Scenarios and Should be Dismissed**

A plaintiff must demonstrate the following to establish a claim for retaliation: "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 225,

---

[7] In response to the Court's initial order, the AG provided a list of twenty-one nurses who "worked the first shift at the Montford Unit on June 2, 2018" (ECF No. 26), which would necessarily comprise the pool of nurses from whom Recio could have sought treatment. After directing the AG to name only nurses who "potentially had contact with Recio during the time and day in question"—i.e., "a first-shift [female] nurse working on Recio's wing on June 1" (ECF No. 27)—the AG provided one name: Amanda Hernandez, whom the AG inexplicably failed to identify in its original twenty-one person list. *Compare* ECF No. 26, *with* ECF No. 28. Under the circumstances present in this case, the Court will conduct no further inquiry into this discrepancy and omission; however, any future failure to fully and accurately respond to Court directives will result in the Court taking appropriate action to ensure compliance, including the possible imposition of sanctions.

231 (5th Cir. 1998)). "To substantiate a claim of retaliation, '[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'" *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (quoting *Woods*, 60 F.3d at 1166). A prisoner's conclusory allegations are insufficient to support a retaliation claim. *Jones*, 188 F.3d at 325.

Here, Recio has pleaded no facts supporting a non-frivolous claim for retaliation. Instead, Recio describes a factual scenario that is fanciful and removed from reality. At the *Spears* hearing, the Court provided Recio with several opportunities to explain the facts forming the basis of his retaliation claim. Recio, however, alleged nothing more than confusing and disjointed contentions that the Medical Professionals retaliated by keeping him at the Montford Unit: (1) under the guise that he is a "mental imminence"; (2) because he is spiritual, speaking "prophesy against Donald Trumpet, presidential"; and (3) for communicating "errands of the court."[8] Tr. 3:39:10–:23, 3:39:35–:42:05. With respect to his spirituality, Recio explained that certain TDCJ officials, including Defendants, are "spiritual players," but he is not. *See* Compl. 9 (alleging that Adams, the inmate involved in the alleged use of force, was "sent by Nurse and officers that are spiritual players[,] trying to steal the spiritual school of Bible prophecies transfiguration and spiritual song and other things that cost alot [sic] of millions of money"), 18 ("I Daniel Vallejo Recio is not a – spiritual player. No to the mad cow decease [sic]."). Recio attributes much of his harm, including the alleged acts of retaliation, to the fact that he is not a spiritual player (a phrase that he did not explain). Tr. 3:39:35–:42:05, 3:43:02–:44:05.

---

[8] In his Complaint, Recio also contends that officials forced him to stay at the Montford Unit "so the officers would have a job." Compl. 28. At the *Spears* hearing, Recio further stated in passing that CO Martinez retaliated but provided no factual basis for his assertion. These conclusory allegations likewise does not support a retaliation claim. *Jones*, 188 F.3d at 325.

Factual claims founded upon fantastic or delusional scenarios, and legal claims based on indisputably meritless theories, are frivolous and must be dismissed under 28 U.S.C. § 1915A(b)(1). *See Denton v. Hernandez*, 504 U.S. 25, 31–32 (1992) (quoting *Neitzke*, 490 U.S. at 328); *Thomas v. United States*, No. 4:17-CV-240-A, 2017 WL 1133423, at *2–3 (N.D. Tex. Mar. 24, 2017) (explaining that although *Denton* and *Neitzke* both defined "frivolous" in the context of § 1915, courts have not indicated that the definition of "frivolous" as used in § 1915A should be any different and therefore applying the *Denton* standard to prisoner's complaint). The Court finds that the facts supporting Recio's claim for retaliation are fanciful and delusional. *See, e.g., Jackson v. Rosenburg*, No. 3:16-CV-2615-B-BK, 2016 WL 7680896, at *1–2 (N.D. Tex. Dec. 12, 2016), *R. & R. adopted*, 2017 WL 103814 (N.D. Tex. Jan. 10, 2017) (dismissing a prisoner's § 1983 action alleging that TDCJ put stolen prescription drugs and hormones in inmates' food); *Williams v. Garcia*, Civil Action No. H–15–709, 2015 WL 3823124, at *1 (S.D. Tex. June 18, 2015) (dismissing detainee's claim for false arrest and detention as frivolous, where detainee's allegation that he was "the Honorable Prophet" and defendants arrested and jailed him based on mistaken identity amounted to a factually frivolous allegation); *Dean v. Prieto*, No. 5:11-CV-013-C, 2013 WL 5405465, at *3 (N.D. Tex. Sept. 26, 2013) (characterizing a prisoner's claim that he was not fed for two months as "irrational and wholly incredible" and dismissing the claim as frivolous). The District Court should therefore dismiss Recio's retaliation claim.

**D.    Recio has not Pleaded Adequate Facts Demonstrating that Defendants Acted with Deliberate Indifference to a Serious Medical Need**

Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d

7

740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (emphasis in original)). Deliberate indifference "is an 'extremely high' standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009)), and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell,* 463 F.3d 339, 345–46 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.*; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

A prison official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alterations and internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dall. Cty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

To properly screen Recio's Complaint, this Court must determine whether he alleges factual content stating a deliberate indifference claim that is plausible on its face, i.e., assertions supporting a reasonable inference that there is more than a sheer possibility defendants are liable for the claimed unlawful conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Recio's allegations concerning Defendants' alleged deliberate indifference to a serious medical need fail to satisfy this minimal standard.

Here, Recio contends that he requested medical treatment from Lieutenant White, Sergeant Camrroon, and Nurse Sauceda a few hours after the May 31 fight, but they denied his request. Tr. 3:16:20–:57, 3:22:11–:43, 3:23:18–:25. Recio states that White, Camrroon, and Sauceda came to his cell to conduct a search around 5 p.m. on May 31. Tr. 3:22:54–:23:24, 3:24:08, 3:25:00–:16. He claims that he asked them to "take [him] to the nurse because the officers had beaten [him] up" but they refused. Tr. 3:16:34–:48, 3:22:54–:23:24, 3:24:48–:54. He further alleges that the next day, June 1, he "spoke to" Nurse Hernandez but "she also denied [him] the attention of

the . . . infirmary." Tr. 3:26:02–:18. Recio asserts that it was not until June 7, 2018, when he attended a disciplinary hearing unrelated to his allegations herein, that Montford officials acted on his report of the May 31 incident, initiating an investigation into the incident and scheduling x-rays for Recio. Tr. 3:26:20–:34. The authenticated records show, and Recio confirmed, that on June 14, 2018, medical staff took lumbar and thoracic spine x-rays. Tr. 3:26:46–:27:03.

Accepting Recio's allegations as true, the operative facts presented to Defendants following the alleged assault consisted of the following: (1) Recio reported to Defendants White, Camrroon, and Sauceda that officers "had beaten [him]" and he needed to see the nurse as a result; (2) the day after the alleged assault he spoke to Nurse Hernandez about going to the infirmary; and (3) despite such requests, Recio received no medical care until approximately two weeks later, following TDCJ opening an investigation into the purported attack.

The communication of such minimal facts to Defendants is insufficient to establish a fundamental element of an Eighth Amendment claim for constitutionally deficient medical care, i.e., that Recio had a serious medical need. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. Recio alleges no facts showing anyone had recommended treatment. More importantly, he makes no factual assertions supporting a reasonable inference that his need for treatment was so obvious that even laymen would recognize he required medical care. Other than the general report of an attack and expressed desire to receive medical treatment, Recio provided Defendants no facts, e.g., specific areas of the body affected, his particular symptoms, and the type/extent of injuries claimed (e.g., overt and obvious), that would show he faced a serious medical need. That is, Recio does not allege he suffered visible injuries or described his symptoms to Defendants such that "even a layperson would easily

10

recognize" he needed a doctor's attention.    Absent such assertions, he cannot state a viable constitutional claim for denial of medical care.  *See Batiste v. Theriot*, 458 F. App'x 351, 356 (5th Cir. 2012) (reversing denial of summary judgment on qualified immunity where officers at scene never thought serious medical emergency existed; because "harm was anything but obvious" decedent's situation "simply [did not] rise to the level of a serious medical need . . ."); *Borgos v. Laperton*, Civil No. 3:16-CV-2936-N-BK, 2017 WL 2912739, at *4 (N.D. Tex. June 10, 2017), *R. & R.* adopted, 2017 WL 2902679 (N.D. Tex. July 7, 2017) (recommending dismissal at screening of constitutional claim for denial of medical care for failure to plead serious medical condition— plaintiff provided no information about the extent of his condition or symptoms endured or facts showing medical need so apparent doctors should have recognized care or medication was required); *Cf. Coleman v. Sweetin*, 745 F.3d 756, 765 (5th Cir. 2014) (holding prisoner's allegation that he "informed [defendants] . . . he had fallen multiple times, his right hip was broken, . . . he was unable to move his leg, lie in bed, or use the toilet," and had been unable to visit the infirmary for four weeks, sufficient to make officials aware of serious medical needs).

This same deficiency also proves fatal to Recio satisfying the objective element required for establishing deliberate indifference.  Recio asserts no facts showing that Defendants White, Camrroon, and Sauceda knew Recio faced a substantial risk of serious bodily harm or injury as a result of the attack.  A reported "fight" could range from nothing more than a minor scuffle to a life-and-death encounter.  Absent specific allegations indicating Defendants knew Recio faced a substantial risk of serious harm as a result of the fight and failed to take reasonable measures to abate it, Recio cannot state a viable claim under the Eighth Amendment for deliberate indifference to a serious medical need.  *See Borgos*, 2017 WL 2912739, at *4 (recommending dismissal where plaintiff failed to allege any facts showing defendants (1) knew he faced a substantial risk of

serious bodily injury as a result of his medical condition (PTSD, depression, and/or anxiety) being left untreated *and* (2) disregarded that risk by failing to take reasonable measures to abate it); *Spearman v. Bell*, Civil Action No. 9:13-CV-290, 2016 WL 5339595, at *5 (E.D. Tex. Aug. 29, 2016) (finding that prisoner, who sustained second degree burns on his arm from hot water in his cell, failed to state a claim for deliberate indifference where, although he showed defendant the red skin on his arm, he did not plead facts suggesting defendant was aware of an excessive risk of harm or that she actually inferred such a risk).[9]  At best, a liberal construction of Recio's claim gives rise to a reasonable inference that the involved officials *should have* perceived a significant risk of serious harm and taken reasonable measures to abate it; however, a negligent or even grossly negligent response cannot form the basis of a claim for deliberate indifference. *Thompson*, 245 F.3d at 459 (holding that "deliberate indifference cannot be inferred merely from a negligent or gross negligent response to a substantial risk of serious harm").

The foregoing reasoning similarly precludes Recio's claim against Nurse Hernandez. Recio states that he "spoke" with Nurse Hernandez on June 1 but "she also denied [him] the attention of the . . . infirmary."[10]  Tr. 3:26:02–:18.  Importantly, however, Recio again alleges no facts indicating that Nurse Hernandez was aware of a serious medical need or a substantial risk of serious harm as a result. *Gobert*, 463 F.3d at 345–46.  To the contrary, Recio merely avers that

---

[9] The fact that x-rays taken two weeks after the incident revealed that Recio had a fractured rib does not alter this analysis or the disposition of his claim.  As set forth above, Recio initially communicated no specific facts to Defendants demonstrating he faced a serious risk of harm—instead, he simply stated he had been attacked and wanted to see medical personnel.  Such generalized reports and complaints fall well short of the specific factual assertions required to support a medical deliberate indifference claim under the Eighth Amendment. *Borgos*, 2017 WL 2912739, at *4; *see Walker v. Butler*, 967 F.2d 176, 177–78 (5th Cir. 1992) (holding that corrections officer, unaware of extent of prisoner's injury following fight and that was later diagnosed as broken ankle, was not deliberately indifferent where he made inmate walk to prison hospital).

[10] At the *Spears* hearing, Recio broadly stated that officials on second shift also ignored his requests for medical treatment. Tr. 3:26:02–:18.  But similar to his claim against Nurse Hernandez, Recio alleges no facts demonstrating that the unnamed second-shift officials were aware of a serious medical need and a substantial risk of harm, or that they actually drew the inference.  To the extent Recio attempts to assert a medical care claim against other officials, his claim should likewise be dismissed.

he spoke with Hernandez—not that he told her he was experiencing symptoms requiring treatment or even that he explicitly asked her for medical treatment. *See* Tr. 3:26:02–:18. Moreover, Recio does not assert that he was suffering from visible injuries at the time he spoke with Nurse Hernandez. *Id.* At best, Recio's allegation might indicate that Nurse Hernandez was aware of Recio's desire for medical attention. As shown above, however, such assertions, standing alone, fail to demonstrate Nurse Hernandez's awareness of a serious medical need and an excessive risk to Recio's health as a result, and cannot form the basis of a viable deliberate indifference claim.[11] Because Recio's allegations against Nurse Hernandez, at best, might give rise to a claim for negligence, such claims suffer the same fate as those asserted against Defendants White, Camrroon, and Sauceda. *See, e.g.*, *Brewster*, 587 F.3d at 770 (holding that negligence does not amount to deliberate indifference). Accordingly, the undersigned recommends that the District Court dismiss Recio's medical care claims against Defendants White, Camrroon, Sauceda, and Hernandez.

**E.    Recio has not Stated a Cognizable Claim for the Alleged Deprivation of Personal Property**

In his Complaint, Recio generally asserts that property officers Martinez and Arismendes "would not give [him his] personale [sic] property." Compl. 30. To the extent Recio claims that the officers confiscated certain personal items, he has not stated a cognizable § 1983 claim.[12]

---

[11] Indeed, Recio merely asserts that he spoke with Hernandez (presumably regarding his desire for medical care), but she did not take him to the infirmary. Tr. 3:26:02–:18. Based on these facts, the Court cannot conclude that Nurse Hernandez knew that Recio needed medical care and nevertheless failed to treat him. *See, e.g.*, *Hines*, 293 F. App'x 261, 263 (5th Cir. 2008). Alternatively, Recio's desire to go to the infirmary may be construed as a disagreement in care—that Hernandez determined, based on her professional opinion, Recio did not need to be evaluated in the medical department but Recio nevertheless wanted treatment in the "infirmary." *See Norton*, 122 F.3d at 292. Ultimately, Recio's conclusory and unspecific allegations fall far short of demonstrating deliberate indifference.

[12] Recio frames his property claim as one for retaliation, stating that he has "been in John Montford Unit since the date (7-23-18) without no [sic] personal property as a malicious violation. . . . I donot [sic] have property tools. (reading glasses, religion material). This violation above is [sic] been done as a threat of [retaliation] harrassment [sic] . . . ." Compl. 17. As discussed in Section III.C., the Court provided Recio with several opportunities at the *Spears* hearing to explain the ways in which Defendants retaliated; Recio merely stated that Defendants "forced" him

13

A prison official's actions—whether negligent or intentional—that result in a loss of property constitute a state tort action rather than a federal civil rights claim. A state actor's negligence that results in an unintentional loss of property does not violate the Constitution. *See Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988). Similarly, an intentional deprivation of personal property does not give rise to a viable constitutional claim as long as the prisoner has access to an adequate state post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (citing several cases for support) ("An inmate's allegation that his personal property was lost, confiscated, or damaged does not state a claim under 42 U.S.C. § 1983, even when prison officials acted intentionally.").

Here, the State of Texas provides an adequate post-deprivation remedy for inmates asserting claims such as those raised herein by Recio—the filing of a lawsuit for conversion in state court. *See, e.g.*, *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). Assuming, without deciding, that the property officers did in fact wrongfully confiscate Recio's property as alleged, Recio may have a cause of action in state court; however, he cannot pursue a constitutional claim in federal court. *Stauffer*, 741 F.3d at 583; *see Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983). Thus, the Court recommends that the District Court dismiss Recio's claim based on the allegedly wrongful confiscation of his personal property.

---

to stay at Montford under the guise that he is a "mental imminence." Tr. 3:39:10–:23. Recio believes Defendants retaliated against him because he is a spiritual being, "born in 1968 with [his] spirituality." Tr. 3:41:11–:42:05. Recio made no mention, however, of any alleged confiscation of his property when discussing his retaliation claim. To the extent he attempts to allege a retaliation claim based on the alleged confiscation of property, Recio's conclusory, incomprehensible allegations in this regard fall far short of stating a viable constitutional claim. *See Jones*, 188 F.3d at 325.

**F.    Recio Possesses no Constitutional Right to have Offender Adams Indicted**

In the relief section of his Complaint, Recio seeks to have Richard Adams, the inmate who allegedly attacked him on May 31, 2018, indicted. Compl. 7. Such relief is not available to him in this forum. "[A] private citizen like Plaintiff cannot initiate a federal criminal prosecution because that power is vested exclusively in the executive branch." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 635 (N.D. Tex. 2007) (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *see Vella v. McCammon*, No. Civ. H–85–5580, 1986 WL 15772, at *2 (S.D. Tex. July 29, 1986) (holding plaintiff's allegations that defendants committed extortion and criminal conspiracy under federal law did not give rise to a civil cause of action). As a private party, Recio "has no standing to institute federal criminal prosecution and no power to enforce a criminal statute." *Gill v. Texas*, 153 F. App'x 261, 263 (5th Cir. 2005) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see Hassell v. United States*, 203 F.R.D. 241, 244 (N.D. Tex. 1999) ("Criminal statutes can neither be enforced by civil action nor by private parties."). Simply stated, no constitutional right exists to have someone criminally prosecuted. *Florance*, 500 F. Supp. 2d at 635 (citing *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990)). Accordingly, to the extent Recio asks the Court to "indict" Adams, the District Court should dismiss such claim for relief.

**G.    Recio's Claims Against Defendants for Excessive Force and Deprivation of Food and Water Survive Preliminary Screening**

*1.    Excessive force*

Recio's use of force claim arises under the Eighth Amendment. To establish a constitutional violation for excessive use of force by a prison official, a plaintiff must show that the defendant unnecessarily and wantonly inflicted pain. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Whether an official's use of force is unnecessary or wanton depends on if the "force was applied in a good-faith effort to maintain or restore discipline or maliciously or

sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320). In *Hudson*, the Supreme Court emphasized that a plaintiff must establish both a subjective and objective component. Specifically, a plaintiff must demonstrate that (1) an official acted with a "sufficiently culpable state of mind" and (2) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8 (quoting *Wilson*, 501 U.S. at 298, 303). Factors relevant to this determination include, but are not limited to, the following: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officers; and (5) any efforts officers made to temper the severity of a forceful response. *See id.* at 7; *Baldwin v. Stadler*, 137 F.3d 836, 838 (5th Cir. 1998) (citing *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)).

Here, Recio alleges that on May 31, 2018, TDCJ John Montford Unit COs Cerbantez and Vasquez used excessive force against him. Compl. 7. Recio concedes that the incident began after he threw water on CO Vasquez when Vasquez allegedly refused to provide him with food. Tr. 3:07:55–:08:15. According to Recio, COs Cerbantez and Vasquez opened both his and Offender Adams's (an inmate across the hall) cell doors and directed Adams to fight Recio. Compl. 7; Tr. 3:08:42–:16:08. Recio stated at the *Spears* hearing that he and Adams fought for approximately fifteen minutes while the officers watched and did nothing to stop the fight. Tr. 3:08:42–:16:08. After fifteen minutes, Recio asserts that COs Vasquez and Cerbantez joined in the fight, with one officer holding Recio down while the other punched him in the ribs and back. Tr. 3:08:42–:16:08. Recio avers that his ribs and back were bruised and painful as a result. Tr. 3:20:47–:21:12.

At this stage of the proceedings, Recio's allegations, taken as true, state a claim sufficient to survive preliminary screening, i.e., an excessive force claim under the Eighth Amendment

against Defendants Cerbantez and Vasquez. While Recio's initial conduct certainly merited some response from Defendants, the facts alleged give rise to a plausible inference, at the screening stage, that Defendants' use of force was applied wantonly and "sadistically to cause harm," rather than in a good faith effort to maintain or restore discipline. *See, e.g.*, *McGuffey v. Blackwell*, No. 18-50148, 2019 WL 4197181, at *2 (5th Cir. Sept. 4, 2019) (quoting *Wilkins*, 559 U.S. at 37) (reversing district court's dismissal as frivolous prisoner's excessive force claim where "nothing in the complaint suggest[ed] that [prisoner] posed any threat to [officer], nor d[id] it appear from the complaint that the force [officer] used was otherwise necessary" and reiterating that excessive force inquiry centers on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"); *Cowart v. Erwin*, 837 F.3d 444, 454–55 (5th Cir. 2016) (holding that prison guard who gratuitously used force against prisoner after he was handcuffed and subdued violated prisoner's constitutional rights); *Hudson v. McAnear*, C.A. No. C–09–327, 2011 WL 67199, at *9–10 (S.D. Tex. Jan. 10, 2011) (denying summary judgment in favor of prison guard on prisoner's excessive force claim in part because evidence did not resolve "whether the *degree* of force was appropriate under the circumstances" or if the defendant applied the force "with malicious or sadistic intent" (emphasis in original)); *Brown v. Larty*, Civil Action No. 6:09cv69, 2010 WL 4736917, at *4–5 (E.D. Tex. Nov. 16, 2010) (explaining that despite prisoner's failure to obey orders, fact issue remained with respect to whether the amount or type of force defendant used was proportional to the need, thus precluding summary judgment in favor of defendant). Thus, the undersigned recommends that the District Court order COs Cerbantez and Vasquez to answer or otherwise plead to Recio's Eighth Amendment excessive force claim.

### 2. *Deprivation of food and water*

Under the Eighth Amendment, prisons have a duty to meet the basic needs of inmates by furnishing adequate food, shelter, clothing, medical care, and a safe environment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Deprivation of food constitutes cruel and unusual punishment only when an inmate is denied "the minimal civilized measure of life's necessities." *See Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). A court should "consider the amount and duration of the deprivation of food in determining whether a constitutional right has been infringed . . . ." *Lockamy v. Rodriguez*, 402 F. App'x 950, 951 (5th Cir. 2010) (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)); *see Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) ("Whether the deprivation of food falls below this ["minimal civilized measure of life's necessities"] threshhold [sic] depends on the amount and duration of the deprivation.").

Recio asserts that COs Martinez, Cerbantez, Vasquez, and Thomason deprived him of food and water from May 31 to June 2, 2018. Compl. 7–8; Tr. 3:07:26–:35. Specifically, Recio stated at the *Spears* hearing that he did not receive dinner or water on May 31 and that Defendants failed to provide him with any meals or water on June 1 and 2—i.e. seven consecutive meals. Tr. 3:31:17–:34:56. He also claims resulting physical injury from the lack of food and water, citing blisters in his mouth, stomach pains and cramps, retching, dizziness, and sleeplessness. Tr. 3:35:11–:36:49. Based on the foregoing allegations, the Court concludes that Recio has stated facts sufficient to survive screening based on the record as presently developed. *Cf. Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (affirming district court's dismissal of prisoner's claim that denial of eight meals over eight months violated his constitutional rights where prisoner failed to allege "any specific physical harm, other than hunger pains"); *Lockamy v. Rodriguez*, Civil Action

No. 5:08-CV-021-C, 2010 WL 11596539, at *5 (N.D. Tex. Feb. 19, 2010) (finding "a fact issue regarding the question of whether Plaintiff was deprived of every meal during a 54-hour period" but nevertheless concluding plaintiff failed to state an Eighth Amendment claim "because he ha[d] not made any claim that he lost weight, suffered any long-term injuries, or that he was in any way injured by missing these meals"); *see also Cooper v. Sheriff, Lubbock Cty.*, 929 F.2d 1078, 1083 (5th Cir. 1991) (reversing district court's dismissal of prisoner's deprivation of food claim where prisoner's allegation that defendants deprived him of food for twelve consecutive days sufficiently stated claim for relief under Fed. R. Civ. P. 12(b)(6)); *Dearman v. Woodson*, 429 F.2d 1288, 1290 (10th Cir. 1970) (reversing district court's summary dismissal of prisoner's claim that defendants denied him all food for fifty hours, stating that "the facts taken as true along with the reasonable inferences, state a cause of action upon which relief may be granted under 42 U.S.C. § 1983"). The undersigned therefore recommends that the District Court order COs Martinez, Cerbantez, Vasquez, and Thomason to answer or otherwise plead to Recio's Eighth Amendment claim based on the denial of food and water.

### III.    <u>Recommendation</u>

For the reasons explained herein, the undersigned recommends that the United States District Court **DISMISS WITH PREJUDICE**, in accordance with 28 U.S.C. § 1915A, Recio's claims for retaliation and deprivation of property against all Defendants, his claims for deliberate indifference to serious medical needs against Lieutenant White, Sergeant Camrroon, Nurse Sauceda, and Nurse Hernandez, and his request for the Court to indict Offender Adams.

With respect to Recio's claims against: (1) Defendants Rudy Vasquez and Erik Cerbantez for excessive use of force; and (2) Defendants Nathan Martinez, Rudy Vasquez, Erik Cerbantez, and Michael Thomason for deprivation of food and water, it is the **RECOMMENDATION** of the

magistrate judge that the United States District Court order Defendants to answer or otherwise plead to the foregoing claims.

### IV.    **Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 26, 2019

D. GORDON BRYANT, JR.
**UNITED STATES MAGISTRATE JUDGE**