IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DANIEL VALLEJO RECIO | § | |
| Institutional ID No. 00598857 | § | |
| SID No. 4470928 | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:18-CV-00264-C |
| | § | |
| RUDY VASQUEZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Daniel Vallejo Recio's Motion for Default Judgment against Rudy Vasquez and Michael Thomason (Dkt. No. 113) filed on October 14, 2022. Senior United States District Judge Sam R. Cummings referred the Motion to the undersigned to hold a hearing to determine damages. Dkt. No. 115. An evidentiary hearing was held on December 2, 2022. Dkt. No. 121.

After consideration of the Motion, the testimony at the evidentiary hearing, and applicable legal authority, the undersigned recommends that Plaintiff's Motion be granted, that Default Judgment be entered against Vasquez and Thomason, and that damages be awarded in the amounts set forth below.

## I.    FACTUAL BACKGROUND

Recio complains about events that occurred while incarcerated at TDCJ's John Montford Unit. *See generally* Dkt. No. 72. Recio's Amended Complaint brings claims

1

against Vasquez, Thomason, Nathan Martinez, and Erik Cerbantez. *Id.* at 1. Recio claims that Cerbantez and Vasquez opened the cell doors of Recio and an inmate housed nearby and instructed the other inmate to fight Recio. *Id.* at 2. Recio initially prevented the inmate from entering his cell, but eventually Vasquez and Cerbantez pushed the other inmate into Recio's cell.[1] Tr. 2:53:50. According to Recio, he and the other inmate fought for approximately fifteen minutes before Vasquez and Cerbantez joined in beating Recio. Dkt. No. 30 at 16. Through his Amended Complaint and damages hearing testimony, Recio claims one of the Defendants held him back while Vasquez repeatedly punched him in his back and ribs. Dkt. No. 72 at 2; Tr. 2:55:20–55:40. Recio claims to have sustained bruises, scratches, and broken ribs as a result of the fight. Tr. 3:15:20–3:16-17:40.

After the fighting incident, Recio says that Vasquez, Cerbantez, Martinez, and Thomason deprived him of food and water for four days.[2] Dkt. No. 72 at 2–3; Tr. 3:17:40–56. Recio claims that the water had been turned off to his cell sink and commode. Tr. 3:18:13. As a result of being deprived of food and water, Recio claims to have suffered weight loss, stomach cramps, mouth blisters, retching, dizziness, and drowsiness. Dkt. No. 30 at 18; Tr. 3:18:40-50.

All Defendants "were terminated from their employment with the Texas Department of Criminal Justice." Dkt. No. 72 at 3. Additionally, Vasquez pleaded guilty

---

[1]Transcript (Tr.) citations refer to the audio record of the evidentiary hearing held on December 2, 2022. Dkt. No. 121.
[2]The undersigned notes that although the preliminary screening Report and Recommendation (Dkt. No. 30) indicates that Thomason deprived Recio of food and water for three days, and the Amended Complaint says Recio was deprived of food and water for "at least three (3) days," Recio clarified at his damages hearing that Thomason deprived him of food and water for four full days. Tr. 3:17:40–56.

criminally to intentionally subjecting Recio to excessive use of force and injury while acting under color of state law. *Id.*

## II.    PROCEDURAL BACKGROUND

Recio filed his initial Complaint on November 1, 2018, against Vasquez, Cerbantez, Martinez, Nurse Sauceda, Sergeant Camrroon, a John Doe Correctional Officer, and various other partially named TDCJ employees. Dkt. No. 1. The case was reassigned to Magistrate Judge D. Gordon Bryant, Jr. on February 22, 2019, to conduct preliminary judicial screening under 28 U.S.C. § 1915A(b)(1). Dkt. No. 19.

Judge Bryant recommended that Recio's excessive force claims against Vasquez and Cerbantez, and his deprivation of food and water claims against Martinez, Vasquez, Cerbantez, and Thomason, survive screening. Dkt. No. 30. Judge Cummings accepted the report and recommendation and ordered all Defendants to file an answer or otherwise respond. Dkt. No. 35.

Recio later filed an Amended Complaint that purported to recast his claims against all four Defendants as causes of action for (1) violation of civil rights under Section 1983, (2) assault threat of bodily injury, (3) assault infliction of bodily injury, (4) gross negligence, and (5) civil conspiracy. Dkt. No. 72. Only Cerbantez filed an answer. Dkt. No. 86. The District Clerk entered a default as to Vasquez, Martinez, and Thomason. Dkt. Nos. 87–89.

After a mediation was ordered and held (Dkt. No. 103)—at which Martinez appeared despite not having filed an answer—a stipulation of dismissal was entered as to Cerbantez and Martinez. Dkt. Nos. 109, 110. Recio then filed his Motion for Default

Judgment against Vasquez and Thomason. Dkt. No. 113. As explained above, Senior District Judge Cummings referred the Motion to the undersigned to hold a hearing to determine damages. Dkt. No. 115. An evidentiary hearing was held on December 2, 2022, during which Recio's attorney clarified that Recio's claims against Vasquez stem from the fighting incident while his claims against Thomason are limited to the post-fight deprivation of food and water.

### III.     LEGAL STANDARDS FOR DEFAULT JUDGMENT

A multi-step process must occur under Federal Rule of Civil Procedure 55 before a default judgment may be entered against a party. First, a default must occur. *N.Y. Life Ins. Co.* v. *Brown*, 84 F.3d 137, 141 (5th Cir. 1996). "A default occurs when a defendant has failed to plead or otherwise respond to [a] complaint within the time required by the Federal Rules." *Id.* at 141. Once a default has occurred, "and that failure is show by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). A party must then apply to the court for a default judgment. *Id.* at 55(B)(1)(2). However, even once a default has been entered and a party makes a motion to the court for default judgment, the court still maintains the discretion in deciding whether to enter default judgment against a party. *See Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2685).

A default judgment is considered "a drastic remedy" and is resorted to "only in extreme situations" where "'the adversary process has been halted because of an essentially unresponsive party.'" *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder*

*Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970). Courts apply a three-step process to determine whether default judgment against a party is appropriate. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381 (W.D. Tex. 2008). First, a factors test is applied to determine if default judgment is procedurally warranted. *Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, courts analyze the merits of plaintiff's claims to determine if they "establish a valid cause of action." *Freightliner*, 548 F. Supp. 2d at 385 (citing *Nishimatsu Constr. Co.* v. *Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Lastly, courts assess the type of relief that should be granted. *See id* at 386.

## IV.    DISCUSSION AND ANALYSIS

### A.    Default Judgment is Procedurally Warranted

To determine whether default judgment is procedurally warranted, courts apply the six-factor test set out in *Lindsey.* 161 F.3d at 893. These factors include:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice to the plaintiff, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

An application of these factors to this case establishes that default judgment is procedurally warranted. Vasquez and Thomason failed to file an answer to Plaintiff's Amended Complaint (Dkt. No 72). Subsequently, Default was entered against both. Dkt. Nos 87, 89. When defendants default, they consequently "admit[] the plaintiff's well pleaded allegations of fact." *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Thus, because of

Defendants' failures to issue responsive pleadings in this case, there are no material facts to dispute.

Additionally, prejudice can be found where, as here, the denial of a default judgment would leave a plaintiff without a proper remedy, *See Landstar Ranger, Inc. v. Parth Enterprises, Inc*., 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).

Next, the grounds for default are clearly established here. Defendants were properly served and thus received notice of the lawsuit filed against them. Dkt. Nos. 75, 76. And the clerk entered Default against Vasquez and Thomason after finding "that the Plaintiff has shown [defendants' failure to respond] through affidavit or otherwise." Dkt. Nos 87, 89.

Moving on to the fourth and fifth factors, nothing in the record indicates that Defendants' failures to respond were the result of a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. And when defendants fail to engage in the litigation process without reason, courts continuously find that entering default judgment against defendants is not a harsh result. *John Perez Graphics & Design, LLC. v. Green Tree Inv. Grp., Inc.,* No. 3:12–CV–4194–M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (finding that defendant's failure to respond mitigated "the harshness of a default judgment"); *Joe Hand Promotions, Inc*. v. *Tacos Bar & Grill*, *LLC*, No. 3:16-cv-01889-M, 2017 F.3d at 893, at *2 (N.D. Tex. Jan. 26, 2017).

Lastly, a court may consider whether it would later be obliged to set aside a default judgment. A default judgment should be set aside upon motion to the court "unless the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense." *Moreno* v. *LG Elecs*., 800 F.3d 692, 698 (5th Cir. 2015) (citing *In re Dierschke*,

975 F.2d 181, 183 (5th Cir. 1992). The prejudice to Recio has been discussed above. And at this point, it appears that Vasquez and Thomason's failures to respond are willful, given that it has been over a year since they were served with Recio's Amended Complaint, during which time a mediation and evidentiary hearing has taken place, and Defendants have failed to make any attempt to engage in the judicial process. It is a fair inference from these facts that neither Defendant has a meritorious defense. Thus, it is unlikely that the Court would set aside a default judgment upon motion.

## B. Entitlement to Default Judgment

The Court must next assess whether the facts alleged in Recio's Amended Complaint establish a sufficient basis for relief. The entry of Default means that Defendants are deemed to have admitted Recio's well-pleaded factual allegations. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. But the allegations in Recio's Amended Complaint must still comply with the sufficiency requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wooten* v. *McDonald Transit Assocs.*, *Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (stating that in determining the sufficiency of the pleadings for purposes of a default judgment motion the court looks to case law on Rule 8).[3]

Rule 8 "requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" FED. R. CIV. P. 8. A complaint must allege enough facts to state a plausible claim. *See Inclusive Communities Project, Inc. v. Lincoln*

---

[3] The undersigned notes that while a magistrate judge previously found that Recio plausibly alleged through his original Complaint claims of excessive force and deprivation of food and water, *see* Dkt. No. 30, that Complaint was superseded by the Amended Complaint, Dkt. No. 72, which provides the basis for the default judgment currently under consideration by the Court. Thus, this FCR addresses the adequacy of these latter factual allegations.

*Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019). This requires a plaintiff to allege facts with enough specificity that a court is permitted to "infer more than the mere possibility of misconduct." *Id.* (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(A)(2)). The amount of detail and level of specificity necessary to state a plausible claim depends on the context of each case. *Id.* (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008)). But when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

 1.  Excessive force

A well-pleaded claim for excessive force "must allege '(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations omitted).

Recio's Amended Complaint, as it relates to his excessive force claim against Vasquez, states that:

> On May 31, 2018, Defendant Cerbantez opened the cell door of an inmate housed next to Recio. At the same time, Defendant Vasquez opened Recio's door, and the inmates were instructed to fight. Once a fight ensued between Recio and the other inmate, Defendants Cerbantez, Martinez, Vasquez, and Thomason refused to intervene; instead, one of the Defendants held Recio against the floor while Defendant Vasquez (alone or with one or more other Defendants) repeatedly punched him in the back and ribs.

Dkt. No. 72 at 2. Recio claims to have suffered bruising, cuts, and fractured ribs. Tr. 3:15:20–3:16-17:40. These factual allegations plausibly establish Recio suffered an injury

that directly resulted from an excessive use of force that was objectively unreasonable. *See Pena*, 879 F.3d at 619.

Through his default, Vasquez is deemed to have admitted these well-pleaded allegations. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. For these reasons, the undersigned FINDS that Vasquez engaged in excessive force on May 31, 2018, by forcing Recio to fight another inmate and by repeatedly striking Recio himself.

2.    Assault claims

Recio also brings state assault claims—assault with threat of bodily injury and assault with infliction of bodily injury. Dkt. No. 72 at 4–5.

In Texas, to show assault with threat of bodily injury, the plaintiff must show that the defendant acted intentionally or knowingly, that the defendant threatened the plaintiff with imminent bodily injury, and the defendant's threat caused injury to the plaintiff. TEX. PENAL CODE ANN. § 22.01; *Jones v. Shipley*, 508 S.W.3d 766, 768–69 (Tex. App.— Houston [1st Dist.] 2016, pet denied) ("The elements of assault are the same in both criminal and civil cases."). Here again, Recio's factual allegations that Vasquez "opened Recio's cell and another inmate's cell and instructed them to fight", that another officer held Recio while Vasquez repeatedly struck him, and that Recio sustained injuries as a result are sufficient to support a claim for assault with threat of bodily injury in Texas. Dkt. No. 72 at 2.

To prove assault with infliction of bodily injury, the plaintiff must establish that the defendant intentionally, knowingly, or recklessly, made contact with the plaintiff's person, and this contact caused the plaintiff's injury. TEX. PENAL CODE ANN. § 22.01. Here, Recio

claims that Vasquez "repeatedly punched [Recio] in the back and ribs" while "one of the Defendants held Recio." Dkt. No. 72 at 2. This establishes that Vasquez's actions were intentional and that he contacted Recio's person. As stated above, Recio asserts that this fight caused bruises, cuts, and broken ribs. Tr. 3:15:20–3:16-17:40. Thus, Recio has plausibly alleged a cause of action for assault with bodily injury under Texas law.

Through his default Vasquez is deemed to have admitted these well-pleaded allegations. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. For these reasons, the undersigned FINDS that Vasquez committed civil assault with threat of bodily injury and civil assault with infliction of bodily injury against Recio on May 31, 2018, by forcing Recio to fight another inmate and by repeatedly striking Recio himself.

3.    Gross negligence

Recio also brings a claim for gross negligence against Vasquez and Thomason. A gross negligence cause of action requires the plaintiff to show that the defendant owed a duty of care to plaintiff, the defendant breached that duty, and the breach proximately caused the plaintiff's injury. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (citing *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995)). However, unlike ordinary negligence, a defendant's act can only be grossly negligent if it shows a conscious indifference to the welfare of the plaintiff. *Dalworth Trucking Co. v. Bulen*, 924 S.W.2d 728, 731 (Tex. App.—Texarkana 1996, no pet.) (citing TEX. CIV. PRAC. & REM. CODE § 41.001).

The facts as alleged in Recio's Amended Complaint state that as correctional officers Vasquez and Thomason owed a duty of reasonable care to protect Recio from

harm. Dkt. No. 72 at 6. But despite this duty, they "knowingly and intentionally caused Recio to fight another inmate." *Id*. Vasquez then joined the fight by repeatedly striking Recio while Thomason "refused to intervene." *Id*.  These allegations plausibly establish that Vasquez and Thomason had a duty of care to Recio as officers at the Montford Unit, that they breached their duty by failing to protect Recio from being beaten on May 31, by Vasquez personally striking Recio, and by Thomason refusing to intervene to prevent Recio from being beaten. These allegations further plausibly support that their breach caused Recio injury and that they were consciously indifferent to his welfare. *Id.* Thus, Recio has established a sufficient factual basis for his gross negligence claim.

Through their default, Vasquez and Thomason are deemed to have admitted these well-pleaded allegations. *Nishimatsu Constr. Co*., 515 F.2d at 1206. For these reasons, the undersigned FINDS that Vasquez and Thomason committed gross negligence on May 31, 2018, by forcing Recio to fight another inmate, by Vasquez repeatedly striking Recio himself, and by Thomason failing to intervene to protect Recio.

4.    Deprivation of food and water

Recio asserts that Thomason violated the Eighth Amendment, which requires prisons to provide inmates with their basic needs such as adequate food, shelter, clothing, medical care, and a safe environment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). When deprivation of food or water falls below "the minimal civilized measure of life's necessities," the Eighth Amendment is violated. *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). What constitutes a deprivation of basic necessities "depends on the amount and duration of the deprivation"

alleged by the plaintiff. *Wilson*, 501 U.S. at 298. The Fifth Circuit has also held that "[b]ecause depriving a prisoner of adequate food is a form of corporal punishment, the [E]ighth [A]mendment imposes limits on prison officials' power to so deprive a prisoner." *Cooper v. Sheriff*, 929 F.2d 1078, 1083 (5th Cir. 1991) (holding that a deprivation of food for five consecutive days states a claim that may entitle a prisoner to relief). Recio alleges that after the altercation with the inmate and officers, Thomason "deprived Recio of food and water" for four days. Tr. 3:04:20–3:05:50; Dkt. No. 72 at 2–3. As a result of not having food and water for four days, Recio suffered stomach cramps, mouth ulcers, dizziness, and fatigue. Dkt. No. 30 at 18. These allegations plausibly establish that Thomas deprived Recio of "life's necessities" for an extended duration, that he did so either maliciously or with callous indifference to Recio's well-being, and that Recio suffered injuries as a result. *See Wilson*, 501 U.S. at 298. This is sufficient to establish a basis for relief under the Eighth Amendment.

Through his default, Thomason is deemed to have admitted these well-pleaded allegations. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. For these reasons, the undersigned FINDS that Thomason violated Recio's Eighth Amendment rights when he deprived Recio of food and water as alleged.

5.    Conspiracy claims

Recio brings two conspiracy claims. Recio claims that Vasquez and Thomason were part of a conspiracy to violate his civil rights by forcing him to fight with another inmate and by depriving him of food and water for multiple consecutive days. Dkt. No. 72 at 6-7.

To establish a Section 1983 conspiracy claim, a plaintiff must establish "'(1) the existence of a conspiracy involving state action,'" and "'(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'" *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). The existence of an agreement necessary to establish a conspiracy is generally shown through circumstantial evidence. *Morales v. Carrillo*, No. EP-19-CV-217-KC-ATB, 2022 WL 4075254 at *8 (W.D. Tex. Sept. 2, 2022).

First, Recio alleges that "Defendants knowingly and intentionally conspired together to force Recio to fight another inmate," and then, instead of intervening to protect Recio, held him "while Vasquez (alone or with one or more other Defendants) repeatedly punched him in the back and ribs." Dkt. No. 72 at 6. These allegations are sufficient to plausibly support both the existence of an agreement to violate Recio's civil rights between Vasquez, Thomason, and others, and a deprivation of those rights.

Second, Recio also claims that because "Cos Martinez, Cerbantez, Vasquez, and Thomason deprived him of food and water from May 31 to June 2," there was a conspiracy amongst Defendants, "to deprive Recio of medical treatment, food, and water for at least three (3) days." Dkt. No. 30 at 4; Dkt. No. 72 at 6. As the magistrate judge previously reported in his preliminary screening Report and Recommendation, Recio testified during his *Spears* hearing that he did not receive dinner or water on May 31 and that the Defendants failed to provide him with any meals or water on June 1 and 2. Dkt. No. 30 at 18.

As explained above, the amount of detail and level of specificity necessary to state a plausible claim depends on the context of each case. *Inclusive Communities Project, Inc.,* 920 F.3d at 899. And here, in the context of already plausible claims that four correctional officers had just subjected Recio to a particularly barbaric and gladiatorial form of excessive force, it is further plausible that Vasquez and Thomason agreed to deprive Recio of food and water. Indeed, the initial disagreement between Recio and Vasquez began because "Vasquez told Recio he would not provide him food." Dkt. No. 30 at 3. Thus, Recio has sufficiently stated a claim that Vasquez and Thomason engaged in a conspiracy to violate Recio's Eighth Amendment rights.

Through their default, Vasquez and Thomason are deemed to have admitted these well-pleaded allegations. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. For these reasons, the undersigned FINDS that Vasquez and Thomason conspired together and with others to deprive Recio of his Eighth Amendment rights to be free from excessive force and to be provided with the minimal civilized measure of food and water.

## C.    Calculation of Damages

Having now determined that a default judgment is procedurally warranted and that Recio has pleaded sufficient facts to plausibly support his claims, the undersigned turns to an assessment of the relief that should be granted.

A party's default does not result in them conceding to the other party's allegations of damages. *Jackson v. Fie Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (citing *U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)). Damages in a default context "must be proved by a hearing or a demonstration of detailed affidavits

14

establishing the necessary facts." *Tubby v. Allen*, No. 6:16cv972, 2019 WL 4565072 at *5 (E.D. Tex. Sept. 3, 2019), *report and recommendation adopted*, No. 6:16-CV-972-JDK-KNM, 2019 WL 4538028 (E.D. Tex. Sept. 19, 2019) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). Ultimately, the "trial court has wide discretion in awarding damages." *Wheat v. United States*, 860 F.2d 1256, 1259 (5th Cir. 1988).

Recio testified at his evidentiary hearing regarding the injuries he sustained from Vasquez and Thomason's actions. Recio seeks compensation for physical injuries and pain and suffering in connection with his claims against Vasquez for excessive force, assault, gross negligence, and the related conspiracy. Tr. 2:47–2:56. Recio also seeks damages for physical injuries and pain and suffering in connection with his claims against Thomason for deprivation of food and water and the related conspiracy. *Id*. Specifically, Recio seeks compensatory damages in the amount of $25,000 each from Vasquez and Thomason. Recio also seeks punitive damages in the amount of $75,000 each from Vasquez and Thomason. *Id.* at 3:22:10-3:24.

1.    Compensatory damages

The guiding principle in awarding compensatory damages under both Section 1983 and tort law is that the plaintiff should be compensated for the injury caused by the defendant's breach of duty. *See Carey v. Piphus*, 435 U.S. 247, 255–59 (1978). A plaintiff who brings a Section 1983 action or an assault claim in Texas may recover compensatory damages for direct physical injuries and emotional distress resulting from those physical

injuries.[4] *See Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987); *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 528 (Tex. App.—San Antonio 1996, writ denied) ("in cases involving assault and battery…a plaintiff may recover for mental suffering apart from other injuries.").

Unlike out-of-pocket losses, placing a value on damages for pain and suffering, and emotional and mental distress, presents unique challenges. *See Cowart v. Erwin*, 837 F.3d 444, 455 (5th Cir. 2016). In cases where "a damage award includes recovery for pain and suffering, which are 'to a large degree, not susceptible to monetary quantification'" there is broad leeway and deference given to the trier of fact. *Id.* (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991)); *See also Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 308 (S.D.N.Y. 2001) ("the law does not provide a precise formula by which pain and suffering and emotional distress may be properly measured and reduced to monetary value."). Texas law allows the trier of fact "to conclude from 'general experience and common sense' that someone suffered pain.'" *Montano v. Orange Cnty.*, 842 F.3d 865, 888 (5th Cir. 2016) (applying Texas law).

The undersigned notes that "A basic principle of compensatory damages is that an injury can be compensated only once. If two causes of action provide a legal theory for compensating one injury, only one recovery may be obtained." *Bender v. City of New York*,

---

[4] In the context of a prisoner case, in order to receive damages for emotional distress the PLRA requires that more than *de minims* physical injury be alleged. 42 U.S.C. § 1997e(e). However, the PLRA does not prevent Recio's recovery for emotional distress because he has alleged sufficient physical injury in the form of fractured ribs, bruises, and cuts to satisfy the requirements of the PLRA for his excessive force claim. And Recio alleges weight loss, stomach cramps, mouth blisters, retching, dizziness, and drowsiness to satisfy the injury requirement of the PLRA for his Eighth Amendment claim. Dkt. No. 30 at 18; Tr. 3:18:40-50.

78 F.3d 787, 793 (2d Cir. 1996). This means that while Recio brings several causes of action under both state and federal law for the fighting incident with Vasquez, his compensation is tied to his injuries rather than a particular cause of action.[5] The same is true for the two causes of action arising from the deprivation of food and water. There can only be one recovery. Thus, Recio's compensatory damages award should compensate him for the harm he suffered as a proximate result of the fighting incident and the deprivation of food and water, but is not multiplied by the number of legal theories under which he brings those claims.

### a. Excessive force, assault, gross negligence, and related conspiracy

With respect to Recio's request for damages against Vasquez, the undersigned FINDS that Recio established through a preponderance of competent evidence that he suffered specific discernable injuries as a proximate result of Vasquez's actions. Recio seeks to recover $25,000 from Vasquez to compensate him for the physical injuries, pain and suffering, and mental anguish proximately caused by Vasquez.

Recio was forced by Vasquez to fight another inmate who Vasquez pushed into Recio's cell. Tr. 2:53:50. According to Recio, this fight lasted fifteen minutes. Dkt. No. 30 at 16. Recio was then held back as Vasquez punched him in a series of several strikes to his ribs and back. Tr. 2:55:20–55:40. As a result, Recio suffered bruises, cuts, and fractured ribs. Tr. 3:15:20–3:16–17:40. Recio claims to have suffered pain from these injuries for an extended period. He testified the bruises and cuts required 20–30 days to heal, and that he

---

[5] Recio also made clear during his evidentiary hearing that he sustained one set of injuries as a result of Defendant Vasquez's actions, despite bringing multiple causes of action. Tr. 2:47–48:50.

suffered pain in his ribs for approximately 45 days. Tr. 3:16–17:40. When asked to describe how much of his back the bruises and cuts covered, Recio said they covered "from [his] waist to the head of [his] back." *Id.*

When faced with the task of awarding compensatory damages for personal injuries, courts may look to similar cases to guide the analysis. *See Johnson v. Hankins*, 582 F. App'x 306, 308 (5th Cir. 2014); *Tubby*, 2019 WL 4565072 at *5 (citing *Mathie v. Fries*, 121 F.3d 808, 814 (2d Cir. 1997)). An award of $25,000 is comparable to compensatory damage awards in similar excessive force cases in the Fifth Circuit. *Johnson*, 582 F. App'x at 308 (affirming jury award of $15,000 in damages for an inmate who was hit and kicked by officer even after falling to the floor and laying curled up on the floor); *Benoit v. Bordelon*, 596 F. App'x 264, 269 (5th Cir. 2015) (affirming award of $15,000 in damages for an inmate who was choked while handcuffed); *Cowart*, 837 F.3d at 455. (finding award of $10,000 for an excessive force case where the inmate was beat by multiple guards and sustained bruising, redness, swelling on his right hand, contusions, and a neck sprain permissible); *Henry v. North Tex. State Hosp.*, No. 7:12-cv-00198, 2014 WL 1744109 at *4 (N.D. Tex. Apr. 30, 2014) (applying Texas law and awarding $10,000 in a default judgment for injuries where the plaintiff "experienced pain and suffering…for at three days.").

Although the award sought here is slightly more than the cases cited, those cases are several years old and Recio's injuries lasted an extended period. And while similar cases serve as a guide, the amount awarded as damages ultimately lies within the Court's discretion. *Wheat*, 860 F.2d at 1259 (5th Cir. 1988).

The undersigned FINDS that Recio has supported his claim for compensatory damages against Vasquez with a preponderance of competent evidence regarding the nature, extent, and duration of the injuries he suffered as a proximate result of Vasquez's actions. The undersigned further FINDS that when considering the repetitive nature of Vasquez's actions, the extended healing process endured by Recio, and the amounts awarded in similar cases, the requested award of $25,000 is fair compensation and justified by the facts of this case.[6]

For these reasons, the undersigned RECOMMENDS that on all claims of excessive force, assault, gross negligence, and conspiracy, Recio recover compensatory damages from Vasquez in the total amount of $25,000, plus post-judgment interest.

### b. Deprivation of food and water and related conspiracy

Recio also seeks compensatory damages from Thomason for depriving him of food and water and the related conspiracy. Here, the undersigned FINDS that Recio established through a preponderance of competent evidence that he suffered specific discernable injuries because of Thomason's actions. Recio seeks to recover $25,000 from Thomason to compensate him for the physical injuries, pain and suffering, and mental anguish proximately caused by Thomason.

Recio claims that despite his requests for food, Thomason denied him breakfast, lunch, and dinner for four full days. Tr. 3:04:20–3:05:50; *See* Dkt. No. 30 at 18. As a result,

---

[6] The Court also believes this amount would be justified if the Court only examined Recio's Texas based assault claims, given that in Texas an award for compensatory damages is also discretionary and awarding damages for pain and suffering can draw on life experience and common sense. *See Montano v. Orange Cnty.*, 842 F.3d at 880.

Recio suffered weight loss, mouth blisters, retching, dizziness, fatigue, and stomach cramps. Tr. 3:18:40–3:18:50; Dkt. No. 30 at 18.

Valuating the pain and suffering that accompanies being deprived of food and water for four days is challenging, and there are few cases with analogous facts. But the Court may rely on common sense and life experience to support a finding that Recio suffered both physically and mentally because of Thomason's actions. *See Cowart,* 837 F.3d at 455. Thus, it appears clear that the physical discomfort associated with going without food and water was likely significant and increased each day the deprivation continued. And Recio was being deprived of water during the middle of a Texas summer, undoubtedly exacerbating both the discomfort and the risk. *See generally* Dkt. No. 72. Additionally, Recio likely experienced significant mental distress related to being deprived of food and water for several days, although his mental limitations made it difficult for him during the damages hearing to fully articulate these hardships.[7] Here, the pain and suffering associated with food and water deprivation was likely compounded by the fact that Recio was also suffering the immediate effects of a physical altercation with officers and another inmate.

The undersigned FINDS that Recio has supported his claim for compensatory damages against Thomason with a preponderance of competent evidence regarding the nature, extent, and duration of the injuries he suffered as a proximate result of Thomason's actions. The undersigned further FINDS that when considering the prolonged nature of Thomason's actions, the extended suffering endured by Recio over four days without food

---

[7] During Recio's hearing, he would frequently begin discussing what the Court can only deem as delusions and needed repeated re-direction in order for the hearing to continue.

and water, and the amounts awarded in similar cases, the requested award of $25,000 is fair compensation and justified by the facts of this case.[8]

For these reasons, the undersigned RECOMMENDS that on all claims of deprivation of food and water and the related conspiracy, Recio recover compensatory damages from Thomason in the total amount of $25,000, plus post-judgment interest.

2.    Punitive Damages

Because there is a presumption that "a plaintiff has been made whole by compensatory damages," punitive damages are reserved for cases where further punishment or deterrence is necessary. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003). "Under section 1983, punitive damages are available 'when the defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others.'" *Tubby*, 2019 WL 4565072 at *5 (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). A finding of excessive force, as here, is sufficient to show the evil motive and intent needed to establish a right to punitive damages in the Section 1983 context. *See Cooper v. Morales,* 535 F. App'x 425, 432 (5th Cir. July 15, 2013)*.* This is because "the threshold standard for excessive-force liability—that the force was applied 'maliciously and sadistically for the very purpose of causing harm'—is substantially indistinguishable from the threshold standard for punitive damages." *Id.* (quoting *Jones v. Conner*, 233 F.3d 574, at *1 (5th Cir. 2000)). In addition to evil motive, punitive damages are recoverable "when the defendant's conduct involves

---

[8] The Court also believes this amount would be justified if the Court only examined Recio's Texas based assault claims, given that in Texas an award for compensatory damages is also discretionary and awarding damages for pain and suffering can draw on life experience and common sense. *See Montano v. Orange Cnty.*, 842 F.3d at 880.

reckless or callous indifference to the plaintiff's federally protected rights[.]" *Smith v. Wade*, 461 U.S. 30 (1983).

In Texas, exemplary damages, also known as punitive damages, may be awarded upon a finding of fraud, malice, or gross negligence. *Finley v. P.G.*, 428 S.W.3d 229, 237 (Tex. App.—Houston [1st Dist.] 2014) (citing TEX. CIV. PRAC. & REM. CODE § 41.003). Malice "means a specific intent by the defendant to cause substantial injury or harm to the claimant"—a finding of assault can support a finding of malice. TEX. CIV. PRAC. & REM. CODE § 41.001; *Durban v. Guajardo*, 79 S.W.3d 198, 209–11 (Tex. App.—Dallas, no pet 2002) (awarding exemplary damages for an assault and intentional infliction of emotional distress). Thus, a punitive damages award is also appropriate under Recio's state law claims.

As explained above, the undersigned has found that Vasquez and Thomason have both engaged in conduct that was motivated by either evil intent or a callous disregard for Recio's Eighth Amendment rights. Thus, having established that punitive damages may be awarded in connection with Recio's claims against Vasquez and Thomason, the Court now considers the appropriate amount.

To determine the adequate amount to award in punitive damages, while ensuring they are not excessive, courts are guided by three factors "(1) the… reprehensibility of defendant's conduct…; (2) the relationship between the penalty and the harm to the victim cause by the defendant's actions; and (3) the sanctions imposed in other cases for comparable misconduct." *Lewis v. Pugh*, 289 F. App'x 767, 777 (5th Cir. 2008) (citing *Cooper*, 535 F. App'x at 434–35)).

### a. Excessive force, assault, gross negligence, and related conspiracy

The Court FINDS that a punitive damages award of $75,000 against Vasquez is justified.

### i.    Reprehensibility

The degree of reprehensibility is "'the most important indicium of the reasonableness of a punitive damages award.'" *Campbell*, 538 U.S. at 409 (2003). Courts consider a number of factors to determine the reprehensibility of a defendant's conduct. These include whether: "(1) the harm was physical or merely economic, (2) the conduct evinced a reckless disregard of the health or safety of others, (3) the target was vulnerable, (4) the conduct involved repeated actions or was an isolated incident, and (5) the harm was the result of intentional malice, trickery, or deceit." *Id.* at 409–10.

Vasquez engaged in physical conduct that showed a reckless disregard to the health and safety of both Recio and the inmate Recio was forced to fight. Because Recio was being held back while Vasquez punched him, Recio was in a vulnerable position. Dkt. No. 72 at 2. Recio is also an inmate at a psychiatric prison[9], adding to his degree of vulnerability. According to Recio, during the altercation, Vasquez struck him in a series of two or three strikes separated by brief respites. Vasquez's actions were repetitive rather than an isolated incident. Tr. 2:59:40–3:00. And Vasquez's intentional conduct was the cause of the harm suffered by Recio. *See id*; Dkt. No. 72.

---

[9]    *Correctional Institutions Division - Psychiatric Facility*, TEX. DEPT. OF CRIM. JUST. https://www.tdcj.texas.gov/unit_directory/jm.html (last visited Jan. 10, 2023) (indicating that the Montford Unit is a psychiatric facility).

ii.     <u>Relationship between penalty and harm to victim</u>

As for the relationship between the penalty and the harm to the victim, this depends "upon the character of the underlying injury and amount of the compensatory damages award." *Cooper v. Morales*, 535 F. App'x 425, 433 (5th Cir. 2013). When the award for compensatory damages is relatively low, this better supports a high award of punitive damages. *Id.* While there is no constitutional line or ratio of punitive to compensatory damages that must not be exceeded, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 410. The courts' adherence to a well-matched ratio between punitive and compensatory damages assures that "the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426.

iii.     <u>Comparable sanctions</u>

The third factor considers "the disparity between the punitive damages award and 'the civil penalties authorized or imposed in comparable cases.'" *Campbell*, 538 U.S. at 428 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). In many cases, the third factor leads courts to consider the "criminal penalties that could be imposed" for the alleged violation. *Id.* (noting that when analyzing the third factor courts "have …looked to criminal penalties that could be imposed."). However, in the context of an excessive force case, courts have concluded that the existence and amount of a criminal fine is not as relevant "in determining the dollar amount of the award, even though it may speak to how serious the state views the action." *Cooper*, App'x at 433 (quoting *Campbell*, 538 U.S. at

24

428). But courts may also compare the amount awarded in similar cases to help guide their analysis. *Faulkenberry v. Yost*, No. AU-15-CA-01089-SS, 2018 WL 297615 at *11 (W.D. Tex. Jan. 3, 2018); *Payne v. Jones*, 711 F.3d 85, 104 (2d Cir. 2013) ("Courts have often found it helpful in deciding whether a particular punitive award is excessive to compare it to court rulings on the same question in other cases.").

In other excessive force cases involving law enforcement, punitive damage awards of between $50,000 and $150,00 have been upheld. *Faulkenberry*, 2018 WL 297615 at *11 (W.D. Tex. Jan. 3, 2018) (awarding $100,000 in punitive damages for an incident where officers came to Plaintiff's house for a 911 call and after what the officer's perceived to be resistance, punched Plaintiff in the face while he was handcuffed); *Payne v. Jones*, 711 F.3d 85, 88 (2d Cir. 2013) (remitting a $300,000 punitive damages award to $100,000 after an officer beat the Plaintiff while he was in handcuffs because the Plaintiff kicked him in the groin) (cited by the Fifth Circuit *Cooper*, 535 F. App'x at 434).

Based on a careful examination of the *Gore* factors, the undersigned FINDS that a punitive damages award against Vasquez in the amount of $75,000 is supported by sound reason and not motivated by bias, prejudice, or sympathy toward any party.[10] The undersigned further FINDS by a preponderance of the evidence that an award of $75,000

---

[10] Under Texas law, Recio could also recover punitive damages for his assault and gross negligence claims. Like federal law, the decision to award punitive damages in Texas is discretionary to the trier of fact. *Merchants Grp., Inc. v. OM & Dev Shah, LLC*, No. 01-19-00294-CV, 2021 WL 1537517 at *7 (Tex. App.—Houston [1st Dist.] Apr. 20, 2021, no pet). The jury considers the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, the extent to which such conduct offends a public sense of justice and propriety, and the net worth of the defendant. *Id.* at *7; 7 Tex. Jur. 3d Assault and Battery § 40. The Court is satisfied that consideration of these factors would also support a punitive damages award of $75,000 under Texas law.

sufficiently reflects the reprehensibility of Vasquez's conduct without being excessive, adequately reflects the relationship between the penalty to Vasquez and the harm to Recio, and results in a ratio of 3:1 between punitive and compensatory damages making it both reasonable and proportional to a compensatory damage award of $25,000.

For these reasons, the undersigned RECOMMENDS that on all claims of excessive force, assault, gross negligence, and conspiracy, Recio recover punitive damages from Vasquez in the amount of $75,000, plus post-judgment interest.

### b. Deprivation of food and water and related conspiracy

The Court also FINDS that a punitive damages award of $75,000 against Thomason is justified.

### i.    Reprehensibility

In regard to the reprehensibility of Thomason's conduct, his decision to deprive Recio of food and water for four days shows a high degree of reprehensibility. Thomason's conduct caused Recio physical harm, and Thomason's decision to continuously deprive Recio over a period of four days of the basic needs required for life shows a reckless disregard for Recio's health and safety. As discussed above, Recio is an inmate, in his 50s, and housed at a psychiatric unit, making him a particularly vulnerable target. Moreover, Thomason's actions were repetitive and ongoing over four days, rather than an isolated incident. Additionally, Thomason's conduct was intentional, because Thomason acted with the purpose of causing the harm that Recio experienced.

ii.   <u>Relationship between penalty and harm to victim</u>

As explained above, the single digits ratio of 3:1 is both reasonable and proportional to the $25,000 compensatory damages award for Plaintiff's physical injuries and pain and suffering.

iii.   <u>Comparable sanctions</u>

Regarding the third factor, a comparable type of penalty here might be that imposed for cases of elder abuse or child neglect, given that in those cases, like here, there is a special relationship that creates a duty to provide basic necessities. TEX. PENAL CODE § 22.04; *see also Murphy v. Gilman*, 551 F. Supp. 2d 677, 686 (W.D. Mich. 2008) (considering the penalties for vulnerable adult abuse in awarding punitive damages for a Section 1983 case where the prisoner died after being given little water and no medical treatment for four days during a heat wave). Child endangerment and elder abuse penalties in Texas can include up to 10 years in prison and a fine up to $10,000. TEX. PENAL CODE §§ 22.04, 12.34. The duration of prison time shows how severe the state of Texas views the offense of failing to provide for another in your care. *See Cooper*, App'x at 433 (quoting *Campbell*, 538 U.S. at 428).

Additionally, the case of *Murphy v. Gilman* provides some guidance in measuring the wrongfulness of Thomason's actions. 551 F. Supp. 2d 677. In *Murphy*, the plaintiff suffered a seizure and was then placed into an observation cell for about four days with little water and no medical treatment, during a Michigan heat wave. *Id.* at 679–80. The Plaintiff was later found dead in his cell from dehydration. *Id.* at 679. The court upheld the jury's $2,500,000 punitive damages award for intentional infliction of emotional distress

and violation of the Eighth Amendment. *Id.* at 685–86. Although in this case the harm Recio suffered did not result in his death, the reprehensibility of Thomason's action is comparable to that of the defendants in *Murphy*.

The purpose of awarding punitive damages further justifies the recommended award here. Punitive damages are meant to deter others from committing similar wrongs. A consideration that is especially prominent in a case where a defendant has a duty to provide an individual basic life necessities but intentionally withholds them instead.

Based on a careful examination of the *Gore* factors, the undersigned FINDS that a punitive damages award against Thomason in the amount of $75,000 is supported by sound reason and not motivated by bias, prejudice, or sympathy toward any party.[11] The undersigned further FINDS by a preponderance of the evidence that an award of $75,000 sufficiently reflects the reprehensibility of Thomason's conduct without being excessive, adequately reflects the relationship between the penalty and the harm to the Recio, and, results in a single digit ratio of 1:3, making it both reasonable and proportionate to a compensatory damage award of $25,000.

For these reasons, the undersigned RECOMMENDS that on all claims of deprivation of food and water and the related conspiracy, Recio recover punitive damages from Thomason in the amount of $75,000, plus post-judgment interest.

---

[11] As explained above, under Texas law, Recio could also recover punitive damages for his assault and gross negligence claims. Like federal law, the decision to award punitive damages in Texas is discretionary to the trier of fact. *Merchants Grp., Inc.,* 2021 WL 1537517 at *7. The jury considers the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, the extent to which such conduct offends a public sense of justice and propriety, and the net worth of the defendant. *Id.* at *7; 7 Tex. Jur. 3d Assault and Battery § 40. The Court is satisfied that consideration of these factors would also support a punitive damages award of $75,000 under Texas law.

3.    <u>Attorney's Fees</u>

In a Section 1983 action, "the court, in its discretion, may allow the prevailing party…reasonable attorney's fees as part of the costs." 42 U.S.C. § 1988. When assessing the amount of attorney's fees recoverable in connection with the successful prosecution of a Section 1983 claim, courts use the lodestar method to determine a presumptively reasonable fee. *Ivey v. Toomey*, 2012 WL 1995246, No. 9:11cv85, at *2 (E.D. Tex. Apr. 12, 2012) ("Federal courts in the Fifth Circuit must use the 'lodestar method' to calculate attorney's fees.") (citing *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *report and recommendation adopted,* 2012 WL 1995233 (E.D. Tex. Jun. 1, 2012); *See also Garmong v. Montgomery Cnty.*, 668 F. Supp. 1000, 1003–07 (5th Cir. 1987)  (using the lodestar method to calculate reasonable attorney's fees for a § 1983 case); *Tubby*, 2019 WL 4565072, No. 6:16cv972, (E.D. Tex. Sept. 3, 2019) (applying the lodestar to calculate the presumptively reasonable fee in a recommendation on a default judgment motion for a § 1983 case), *report and recommendation adopted* 2019, WL 4538028 (E.D. Tex. Sept. 19, 2019).

The lodestar is "calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003) (citation omitted). There is a strong presumption that the lodestar amount renders a reasonable fee. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

The party seeking an award of attorney's fees has the burden of proving the reasonableness of the hours expended and the rate charged. *See Riley v. City of Jackson*,

99 F.3d 757, 760 (5th Cir. 1996); *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990). The documentation provided to the court regarding attorney's fees "must be sufficient for the court to verify that the applicant has met its burden." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). If a party's proof of their fees is inadequate, the court may reduce the award accordingly. *Id*; *Watkins*, 7 F.3d at 457.

After making a lodestar determination, the court may consider whether the circumstances warrant a lodestar adjustment, this requires the court to consider twelve factors articulated in *Johnson*. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases.

*Id*. (citing *Johnson*, 488 F.3d at 717–19). The Court need not address each factor of the *Johnson* analysis in determining an award of attorney's fees. *See Blanchard v. Bergeron*, 893 F.2d 87, 91 (5th Cir. 1990) (overruling *Johnson* on other grounds).

The Court first considers the reasonableness of the number of hours expended on this case. In Recio's Motion for attorney fees (Dkt. No. 124), he claims that a total of 123 hours was spent working on the case. This is supported by an Affidavit of Matthew Zimmerman, the attorney who spent the majority of the time working on the case, and

through records of a software program called Tabs3 which Zimmerman says the Bustos Law Firm, P.C. uses to track its time on cases. Dkt. No. 125.

The Redacted Billing information breaks down time spent on specific tasks, shows that each task was related to the prosecution of claims against Vasquez and Thomason, and does not reflect unnecessary or duplicative hours. *See Glass v. United States*, 335 F.Supp.2d 736, 739 (N.D. Tex. 2004); *Kellstrom*, 50 F.3d at 324. Thus, the undersigned FINDS that a total of 123 hours expended on the case was reasonable.

Next, to determine whether the hourly rate in this case was reasonable the Court "considers the attorneys' regular rates as well as prevailing rates" within the community. *Kellstrom*, 50 F.3d at 328; *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984). "The burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

A reasonable hourly rate may be shown through affidavits of attorneys within the community, information about the attorney's regular rates, and comparison to similar cases. *See Tubby v. Allen*, 2019 WL 4565072 at *10–11; *Kellstrom*, 50 F.3d at 328; *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

For this case, attorney Zimmerman charged an hourly rate of $350, attorney Fernando Bustos charged $400, attorney Brandon Callahan charged $250, paralegal Elizabeth Seeley charged $150, and a law clerk charged $75. Dkt. No. 125-1 at 4. Zimmerman provides an affidavit reflecting the hourly rate that he, Bustos, Challahan,

Seeley, and the law clerk regularly charge and the discounted rate they charged for this case. *Id.* at 4. Zimmerman also cites to numerous cases within the Northern District of Texas that have approved rates similar to the hourly rate at issue here. *Id.* at 3. And Zimmerman asserts that he is "familiar with the customary rates and fees charges by attorneys in West Texas" and that the fees charged are "customary for the West Texas area." *Id.* 4–5. Additionally, Zimmerman includes his resume which indicates numerous cases that he has tried in federal court and the number of years he has been a practicing attorney. Dkt. No. 125-2. The undersigned FINDS the hourly rates charged by the Bustos Law Firm to be reasonable.

The appropriate Lodestar fee is 19,697.50 for the 123 hours spent working on the case.

Lastly, the Court considers whether an adjustment should be made based on the factors articulated in *Johnson* as stated above. *Migis*, 135 F.3d at 1047 (citing *Johnson*, 488 F.3d at 717–19). The Court does not find an adjustment necessary, nor does Recio request one. Dkt. No. 124 at 4 ("Recio does not seek an upward adjustment to the lodestar amount based on the *Johnson* factors."). This case did not involve any novel legal issues or special skill to perform, the rate provided for in the Lodestar fee is in line with similar cases, and there were no unusual time constraints. *Id.*

 For these reasons, the undersigned RECOMMENDS that Recio's Motion for Award of Attorney's Fees (Dkt. No. 124) be granted and that he recover attorneys' fees from Vasquez and Thomason, jointly and severally, in the amount of $19,697.50.

## V.  CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that:

1.      Default judgment be entered against Vasquez on Recio's claims for:

a. Excessive force in violation of the Eighth Amendment under 42 U.S.C. § 1983;

b.  Conspiracy under 42 U.S.C. § 1983 to violate Recio's Eighth Amendment rights through excessive force and deprivation of food and water;

c.  Assault-threat of bodily injury, assault-infliction of bodily injury, and gross negligence under Texas state law.

2.      Default judgment be entered against Thomason on Recio's claims for:

a.  Deprivation of food and water in violation of the Eighth Amendment under 42 U.S.C. § 1983;

b.  Conspiracy under 42 U.S.C. § 1983 to violate Recio's Eighth Amendment rights through deprivation of food and water.

3.      On all claims of excessive force, assault, gross negligence, and the related conspiracy, Recio recover compensatory damages from Vasquez in the total amount of $25,000, plus post-judgment interest.

4.      On all claims of deprivation of food and water and the related conspiracy, Recio recover compensatory damages from Thomason in the total amount of $25,000, plus post-judgment interest.

5.      On all claims of excessive force, assault, gross negligence, and conspiracy, Recio recover punitive damages from Vasquez in the amount of $75,000, plus post-judgment interest.

6.    On all claims of deprivation of food and water and the related conspiracy, Recio recover punitive damages from Thomason in the amount of $75,000, plus post-judgment interest.

7.    Recio recover attorneys' fees from Vasquez and Thomason, jointly and severally, in the amount of $19,697.50, along with costs.

## VI.  RIGHT TO OBJECT

If any party wishes to object to any part of these Findings, Conclusions, and Recommendation, the party must file specific written objections within fourteen days after being served with a copy of these Findings, Conclusions, and Recommendation. *See* 28 U.S.C. § 636(b)(1) (2017); FED. R. CIV. P. 72(B). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 2nd day of February, 2023.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE